UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT RICHARD ELLIS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CORIZON, INC.; DR. YOUNG; N.P. POULSON; MS. RONA SEIGERT; MS. SHELLI MALLET; P.A. TAKAGI; WARDEN BLADES; WARDEN YORDY; N.P. GELOK; NP SHAFFER,<br><br>　　　　　　Defendants. | Case No. 1:15-cv-00304-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this prisoner civil rights action are several motions ripe for adjudication. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order.

## BACKGROUND

Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC), alleges that from October 15, 2008 to April 25, 2015, Defendants acted with deliberate indifference by refusing to authorize an MRI test for Plaintiff so that his back and hip

**MEMORANDUM DECISION AND ORDER - 1**

problems arising from a 2006 prison basketball game injury could be correctly diagnosed and treated. Even after he received the MRI test, several employees of the prison medical care provider, Corizon, told Plaintiff that he had only degenerative issues for which no further treatment was indicated. Several years later, medical providers revisited the MRI report, and saw that they had missed an "addendum" to the report which showed the diagnoses of a torn labrum (hip cartilage) and a hip bone cyst, in addition to degenerative changes to the bone. Plaintiff underwent surgery to repair his hip.

The Court permitted Plaintiff to proceed against Defendants Physician's Assistant Takagi, Nurse Practitioner Gelok, Rona Siegert, Dr. Murray Young, and Corizon, Inc. Plaintiff has filed two pro se motions for reconsideration seeking to proceed against the other Defendants named in the Complaint, for whom the Court found insufficient allegations. (Dkt. 13, 17.) Defendant Takagi has filed a Motion for Summary Judgment asserting that Plaintiff failed to exhaust his administrative remedies as to the claims asserted against him. (Dkt. 18.) Plaintiff has since retained counsel.

## MOTION FOR SUMMARY JUDGMENT

1. **Standard of Law**

The Prison Litigation Reform Act of 1995 ("PLRA")[1] requires a prisoner to exhaust all available administrative remedies within the prison system before he can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 2**

confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The *Ngo* Court noted that "proper" exhaustion of administrative remedies means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. Similarly, in *Jones v. Bock*, 549 U.S. 199 (2007), the Court clarified that, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

For example, in *Jones v. Bock*, the *Supreme* Court concluded that because the prison's "procedures [made] no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion [was] unwarranted." *Id*. The Supreme Court observed: "The PLRA requires exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), but nothing in the statute imposes a 'name all defendants' requirement.'" *Id.* at 217.

**MEMORANDUM DECISION AND ORDER - 3**

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the beginning of litigation, and "disputed factual questions relevant to exhaustion should be decided" at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner is relevant to the question "of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding

MEMORANDUM DECISION AND ORDER - 4

grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim only if the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1166. When either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be determined as a matter of summary judgment under Rule 56. *Id.* at 1170. "If the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion," the Court may enter summary judgment for either the moving or the nonmoving party. *Id*. at 1176; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.")

Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Albino*, 747 F.3d at 1170-71. *See Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (the court

**MEMORANDUM DECISION AND ORDER - 5**

has the discretion to take evidence at a preliminary hearing to resolve any questions of credibility or fact and that the plaintiff must establish the facts by a preponderance of the evidence, just as he would have to do at trial).

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

### 2. IDOC Grievance Process

There are three stages in the IDOC grievance process. First, an inmate with a concern must seek resolution of the problem by filling out an offender concern form, addressed to the proper staff member. If the issue cannot be resolved through the use of a concern form, the inmate must then file a grievance form. The grievance is then resolved by a Level 1 – Initial Response, which is reviewed in a Level 2 - Reviewing Authority Response, and then returned to the inmate. If the grievance did not resolve the issue satisfactorily, the inmate must file an appeal, which is reviewed and a final decision issued in a Level 3 Appellate Authority Response. When all three of these steps—concern form, grievance form, and grievance appeal—are completed, the administrative grievance process is exhausted. (See Dkt. 18-3 and 18-4.)

### 3. Discussion

Defendant Takagi asserts entitlement to summary judgment because he was not named in Plaintiff's grievance. Rather, Plaintiff's grievance stated the following:

**MEMORANDUM DECISION AND ORDER - 6**

> *The problem is:*
>
> *6/11/14 Dr. Young refered me lo Dr. Swartzman / specialist for my R. hip lower back issues. 6-30-14 1 saw Dr. Swartzman. 7-11-14 M.R.I. requested by N.P. Gelok. 7-24-14 M.R.I. denied by Dr. Young 7-28-14 M.R.I. requested again by N.P. Gelok. M.R.I. denied again, this time by Corizon Corporate. 9-18-14 M.R.I. was finaly given. 10-1-14 N.P. Gelok reviewed M.R.I., told me that all I had was degenerative bone in hip, 4 6 15 self initiated visit P.A. Poulson finds mistake in M.R.I. review. Orders referal to ortho A.S.A.P.*
>
> *I have tried to solve this problem informally by:*
>
> *Countless attempts for years to get my hip properly looked al, evaluated. See attached concern forms & H.S.R.'s all the while I was misdiagnosed & denied treatment.*
>
> *I suggest the following solution for the problem:*
>
> *Compensate me for my pain & suffering. Give me corrective surgery to fix my hip. Provide proof to me that Corizon & Corizon employees do not deny inmates treatment due to financial cost!*

(Dkt. 18-6 (verbatim).)

The IDOC has published a lengthy policy governing the grievance system, which provides that a grievance "must (a) contain a reasonable and clear description of the problem **and** (b) contain specific information such as dates, places, and names." (Dkt. 18-4, p. 10, emphasis in original.) The common meaning of "such," as used in the grievance policy, is "of the same of a similar kind," and the idiom "such as" means "for example" or "like or similar to." *See* http://www.yourdictionary.com/such. Therefore, the policy reasonably can be read to mean that the prisoner must include specific information, which may include the following: dates, places, and names.

This Court did not find any case interpreting the idiom "such as" in the manner Defendant asserts. Rather, the cases tend to support the opposite. Though not of precedential value, the reasoning of these cases is sound and consistent with each other.

**MEMORANDUM DECISION AND ORDER - 7**

*See Appeal of J.W. Bateson Co., Inc.*, VABCA No. 2071, 85-3 B.C.A. (CCH) ¶ 18394 (Sept. 16, 1985) (concluding that "the central meaning of 'such as' is 'for example'"); *Lawler Mfg. Co. v. Bradley Corp.*, 280 F. App'x 951, 954 (Fed. Cir. 2008) (unpublished) (observing that "such as" is a term that "refers either to items similar to what are recited" or to "examples of what is covered by that provision"); *Mauerhan v. Principi*, 16 Vet. App. 436, 442 (2002) (explaining that the phrase "'such as' means 'for example' or 'like or similar to'" (quoting Webster's New World Dictionary 1337 (3d coll. ed. 1988)), and, therefore, "[t]he use of the term 'such as' demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms."); *Warren v. McDonald*, No. 13-3161, 2016 WL 2640983, at *3 (Vet. App. May 10, 2016) (unpublished) (concluding similarly and noting that "it is not in the business of repairing poorly drafted regulations").

The IDOC policy plainly does not require that the prisoner provide *all* names, because that would have been very easy for the IDOC to specify—"provide all names of the staff involved," or provide every name of the staff involved." If Defendants desire to enforce a policy provision strictly, it must be written in a precise manner that supports their interpretation. Here, a loosely-written policy cannot be strictly enforced.

Other provisions of the grievance policy support the Court's interpretation. The policy provides that the Offender Concern Form (OCF)—which is the first step in the grievance process—may not be accepted by IDOC staff if it contains "vague issues/complaints." (Dkt. 18-4, p. 8.) There is no requirement that every person involved in the problem or issue be named at the outset of the administrative grievance procedure.

**MEMORANDUM DECISION AND ORDER - 8**

In addition, in what seems to be an effort to summarize the grievance policy (perhaps because it is so long), the IDOC publishes a "Grievance and Informal Resolution Process for Offenders Offender Handout" (Handout). (Dkt. 18-4, p. 23.) One would think that the Handout would contain the very important information that grievances must include some specific information "such as" dates, places, and names, but it does not.

The IDOC seems to rely primarily on the Handout to provide prisoners with necessary information regarding grievances, because it specifies that (1) all prisoners *are to be given* a copy of the Handout (which has no information about mandatory items to be included in the grievance—rightly so, because the policy is not stated in mandatory terms), and (2) facility heads must ensure that the lengthy grievance policy contained in the SOP manual is *readily available* to all offenders housed in their facility. Prisoners must seek out the SOP manual if they desire to find out the information that grievances must contain specific information, such as dates, places, and names.

The Handout *does* instruct prisoners to read the policy by asking a staff member for the SOP. However, because the Handout appears to be a *summary* of the procedures, it may mislead inmates to believe that it contains the important points of the policy, but, in fact, the Handout contains no instruction to use specific information in writing grievances.

**MEMORANDUM DECISION AND ORDER - 9**

### 4. Conclusion

The Court concludes that Defendant Takagi is not entitled to summary judgment because the only mandatory part of the grievance procedure at issue is that the prisoner include *some* specific information of the type listed in the grievance policy, which Plaintiff did.

## MOTIONS TO AMEND

While proceeding pro se, Plaintiff filed two motions asking the Court to reconsider its Initial Review Order. (Dkt. 13, 17.) For the following reasons, the motions will be denied, but Plaintiff, through counsel, will be given an opportunity to file a second motion to file an amended complaint, if counsel deems it appropriate under the circumstances.

If Plaintiff desires to proceed against Nurse Shaffer or Nurse Poulson, he will have to clarify which allegations demonstrate deliberate indifference. For example, Plaintiff has alleged that Poulson "misdiagnosed" his condition, a term that generally equated with negligence, a cause of action that is not cognizable as a constitutional claim.

A constitutional tort requires that the plaintiff show that the state actor deliberately or intentionally caused the deprivation, or, at the least, did so in a subjectively reckless manner—disregarding a risk of harm of which he or she is aware. *See Farmer v. Brennan*, 511 U.S. 825, 836-38 (1994) (rejecting the objective reckless standard, which is where a "person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is . . . so obvious that it should be known";

**MEMORANDUM DECISION AND ORDER - 10**

and observing that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment"). Gross negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327 (1986).

Plaintiff also desires to proceed against Wardens Blades and Yordy. It is insufficient to say only that these Defendants were "personally informed" that Plaintiff was suffering from serious pain. These allegations do not show that these wardens were aware that Plaintiff was receiving inappropriate treatment. Plaintiff must provide additional facts stating how, when, and where these Defendants were "personally informed" that inappropriate treatment issues were causing Plaintiff undue pain. Plaintiff has provided insufficient allegations supporting his contention that the medical contractor removed all pain medication from the prison and replaced it with psychotropic medication, as he vaguely alleges, or that, if true, the wardens knew that no pain medication was being permitted in prison during the time period in question.

Plaintiff also desires to proceed against Shelli Mallet, who required him to resubmit his "concern form." Plaintiff has not shown how this requirement caused him harm if he immediately resubmitted the form. Nor has he shown that the requirement (or any delay in the processing of the forms) was due to deliberate indifference of Mallet. As with the allegations against the wardens, there are no facts regarding when these actions

**MEMORANDUM DECISION AND ORDER - 11**

(including any resubmissions) took place. For all of these reasons, the motions for reconsideration will be denied.

## ORDER

IT IS ORDERED:

1. Plaintiff's Motions to Reconsider Initial Review Order (Dkt. 13, 17) are DENIED without prejudice.

2. Defendant Takagi's Motion for Summary Judgment (Dkt. 18) is DENIED.

3. Within 30 days after entry of this Order, Counsel shall consult together and submit a joint (or if there is no agreement, separate) proposed scheduling order(s), which must include proposed deadlines for amendment of pleadings, discovery, expert disclosure, and dispositive motions on the merits of the remaining claims.

DATED: September 2, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court