Ryan T. Earl
EARL & EARL PLLC
6126 W. State Street #203
Boise, ID 83703
Telephone: 208-890-0355
Fax: 208-465-6156
ISB# 8342 WSBA# 34007 CO#45910
enepllc@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT RICHARD ELLIS,<br><br>            Plaintiff,<br><br>     vs.<br><br>CORIZON, INC.; DR. YOUNG; N.P. POULSON; MS. RONA SIEGERT; PA TAKAGI;; WARDEN YORDY; N.P. GELOK; N.P. SHAFFER.<br><br>            Defendants. | Case No:  1:15-CV-00304<br><br>VERIFIED FIRST AMENDED COMPLAINT |

COMES NOW the Plaintiff, KENT RICHARD ELLIS, (Hereinafter Kent Ellis) by and through his attorney of record, Ryan T. Earl, of the law firm EARL & EARL, PLLC, and hereby submits to this Court Plaintiff's First Amended Complaint, and in support, states the following:

### I. PLAINTIFF TO THIS ACTION

1. Plaintiff Kent Richard Ellis is an inmate housed at the Idaho State Correctional Institution, Unit 13, P.O. Box 14, Boise, Idaho, 83707. Mr. Ellis (IDOC #60074) is in the care and custody of Warden Keith Yordy.

///

///

**VERIFIED FIRST AMENDED COMPLAINT-** 1 of 17

## II. DEFENDANTS IN THIS ACTION

2. Upon information and belief **Corizon Health, Inc** (hereinafter Corizon) is a privately held for profit business incorporated under Delaware law whose principle place of business is in Brentwood, Tennessee. Acting under Color of State Law, the acts of Defendant Corizon, deprived Mr. Ellis of his rights under the Eighth Amendment of the United States Constitution. Defendant Corizon had and has final authority in treatment policy, customs, and practice, concerning the acts in this instant action at bar. When Corizon engaged in these acts, they were acting as final policy maker and under Color of State Law and violated their constitutional duty to protect and provide adequate and proper medical care to those entrusted in their custody.

3. Defendant **Murray Young, M.D.,** is employed by or contracted with Corizon as the regional medical director. His role was to oversee and provide medical care to the inmates held at Idaho State Correctional Institute- (herein after ISCI). Dr. Young is being sued in his individual and official capacity. But for the actions, malpractice, inactions, delays, and deliberate indifference to Mr. Ellis' medical condition by Dr. Young and his staff, Mr. Ellis would not have suffered prolonged pain, suffering and eventual surgical intervention.

4. Defendant **William Poulson, N.P.**, is an individual who was employed and/or contracted by Corizon Health to provide medical care to the inmates held at ISCI. N.P. Poulson is being sued in his individual and official capacity. N.P. Poulson did not perform or formally request further diagnostic testing for Plaintiff's injuries. But for the actions, inactions, delays, and deliberate indifference to Mr. Ellis' medical condition, by N.P. Poulson, Mr. Ellis would not have suffered prolonged pain, suffering and surgical intervention.

5. Defendant **Rona Siegert** is an individual who was employed by Idaho Department of Corrections. Ms. Siegert acted as the Medical Health Service Director and Appellate Authority for all the medical grievances at Idaho Department of Corrections (herein after referred to as IDOC). Ms. Siegert is the final authority in all medical grievances and issues. Ms. Siegert became aware of Plaintiff's long term pain and suffering from medical staff and from personal contact with Plaintiff. Ms. Siegert was informed by medical staff that Plaintiff had been misdiagnosed and her inactions after learning of the misdiagnosis contributed to Plaintiff's long-term pain and suffering.

6. Defendant **Michael Takagi, P.A.-** P.A. Takagi was employed by or contracted with Corizon as a Physician's Assistant to provide medical care to inmates at IDOC. P.A. Takagi refused to perform or formally request any diagnostic evaluations of Plaintiff's hip and back when Plaintiff complained of serious pain. With reference to diagnostic evaluations, P.A. Takagi indicated to Plaintiff that P.A. Takagi's "hands were tied" and there was nothing anyone could do for Plaintiff.

7. Defendant **Warden Keith Yordy-** Warden Keith Yordy is employed by IDOC as the warden of ISCI where Plaintiff is currently housed. Warden Yordy is on a panel of individuals who monitor the medical care of the inmates at ISCI and was personally made aware of Plaintiff's pain and suffering and the lack of diagnostic testing by direct contact with Plaintiff. In addition, Warden Yordy was informed of the misdiagnosis of Plaintiff's injuries and did not intervene on Plaintiff's behalf.

8. Defendant **Christian Gelok, N.P.-**N.P. Gelok is an individual that was employed by or contracted with Corizon as a nurse practitioner to provide medical care to inmates at IDOC. N.P. Gelok informed Plaintiff that N.P. Gelok had been directed by Defendant Corizon

that he was not to order MRIs for the inmates to save on expenses. Even after Plaintiff received an MRI, N.P. Gelok informed Plaintiff that the MRI results showed there was nothing wrong with Plaintiff when in fact, the results showed significant degeneration and damage to Plaintiff's hip.

9. Defendant **Scott Shaffer, N.P.-** is an individual who was employed and/or contracted by Corizon Health to provide medical care to the inmates held at ISCI. N.P. Shaffer is being sued in his individual and official capacity. N.P. Shaffer did not perform or formally request further diagnostic testing for Plaintiff's injuries. But for the actions, inactions, delays, and deliberate indifference to Mr. Ellis' medical condition, by N.P. Shaffer, Mr. Ellis would not have suffered prolonged pain, suffering and surgical intervention.

### III.   JURISDICTION AND VENUE

10. This action arises under the Constitution of the United States, particularly the Eighth, and Fourteenth Amendments to the Constitution of the United States, and the law of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988.  This action is brought for damages and other appropriate relief for violation of Mr. Ellis' civil rights under color of state law.

11. The court has jurisdiction over Mr. Ellis' federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(a).  The court has jurisdiction over Mr. Ellis' state claims pursuant to 28 U.S.C. §1367.  Venue is proper in this district pursuant to 28 U.S.C. §1391 (b).

### IV.   PREVIOUS LAW SUITS

12. Mr. Ellis has never filed suit in State and Federal court.

///

///

## VI. FACTUAL ALLEGATIONS

13. Plaintiff has been incarcerated since 2000 and is currently housed at Idaho State Correctional Institute (herein after ISCI).

14. Prior to incarceration, Plaintiff was a very active/athletic individual and since incarceration, Plaintiff has tried to maintain as active a routine as his incarceration and injuries allow.

15. In early 2006, Plaintiff was transferred to the Bill Clayton Detention Center in Lubbock, Texas. In 2008, Plaintiff returned from the Bill Clayton Detention Center to the Idaho Department of Corrections, Boise, Idaho.

16. In 2006, while at the Bill Clayton Detention Center in Texas, Plaintiff suffered an injury to his right hip and back after a fall while playing in a basketball game. Plaintiff was unable to bear weight on his right leg and was immediately taken to medical for an evaluation.

17. Upon returning to Idaho, Plaintiff informed Corizon medical personnel of his hip and back injuries and presumed his complete medical records from Bill Clayton Detention Center would be readily available to Corizon employees and contractors with the documented right hip and low back injury and the treatment, if any, to those areas.

18. Corizon medical personnel were aware of Plaintiff's fall in 2006 that injured his back and right hip. Plaintiff continued to complain of constant right hip and low back pain that restricted his activity level and disrupted his sleep.

19. Although Plaintiff had a history of back pain noted at the Idaho and Texas Correctional facilities, he stated to medical personnel that the pain he was experiencing after the fall was lower in his back than he had felt any time prior to the fall.

**VERIFIED FIRST AMENDED COMPLAINT-** 5 of 17

20. Plaintiff had no history of right hip pain prior to the fall during the basketball game.

21. On August 25, 2008, Plaintiff submitted a Sick Call Request for pain he felt in his right hip and requested to be seen for an evaluation. At this time, Plaintiff believed the hip problem was contributing to his low back pain.

22. On August 27, 2008, Plaintiff was seen for an evaluation for right hip pain. It was noted that Plaintiff experienced pain in a range of 6-10/10 and should be referred to an MD. The signature of the medical personnel who saw Plaintiff is illegible.

23. On October 15, 2008, Plaintiff was seen by a medical provider employed by or who contracted with Corizon for right hip pain, whose name is illegible.

24. On 12/02/2008, Plaintiff was seen again by a medical practitioner whose name is difficult to read). The doctor ordered x-rays of Plaintiff's right hip and low back which were taken this same day. In the conclusion portion of the x-ray report, it states in part *"suspect early degenerative articular cartilage loss at the right hip superior laterally."*

25. On August 13, 2009, Plaintiff was seen by Defendant Takagi for hip and lower back pain relating to the injury in 2006.

26. Defendant Takagi told Plaintiff there was nothing significantly wrong with his hip or back and prescribed ibuprofen for pain management.

27. Plaintiff believed his pain level warranted further diagnostic testing since there was no change in the pain approximately three (3) years after the injury occurred. Plaintiff discussed this with Defendant Takagi and Plaintiff requested an MRI.

28. Defendant Takagi denied Plaintiff's request indicating to Plaintiff that the pain, in Plaintiff's hip or back did not warrant an MRI.

**VERIFIED FIRST AMENDED COMPLAINT-** 6 of 17

29. Plaintiff was seen on 9/21/2010 for an 'Initial Health Screening' where it was documented that Plaintiff had chronic back pain that averaged 6/10 on a pain scale.

30. Under the false belief that there was nothing else that could be done for Plaintiff's right hip and back, Plaintiff made an effort to deal with the pain and maintain activities that he enjoyed.

31. The pain in Plaintiff's right hip and low back did not subside nor improve with time, prescribed ibuprofen, or unsupervised exercise programs.

32. In March of 2011, Plaintiff suffered a significant injury to his right shoulder which took precedence over addressing his continued right hip and low back pain. Plaintiff's shoulder injury required surgical intervention which was performed one (1) year after the injury occurred. The injury and subsequent surgery to Plaintiff's right shoulder became the focal point of the medical providers with Corizon.

33. On May 24, 2013, Dr. Glen Babich, a Corizon employee or contractor, recognized Plaintiff's continual hip and low back pain and suggested Plaintiff enroll in a persistent pain clinic. This suggestion, approximately seven (7) years post injury, acknowledged the continual pain Plaintiff experienced in his right hip and low back. However, no advanced diagnostic testing was approved to determine the cause of Plaintiff's daily pain.

34. On October 21, 2013, Plaintiff submitted another Health Service Request for increased right hip and low back pain. Plaintiff was seen on this same day by a Registered Nurse and it was noted that this increase had been significant for 3-4 months.

35. NP William Poulson ordered an x-ray of the right hip on November 4, 2013 to compare it to the right hip x-ray taken five (5) years prior in 2008.

36. Plaintiff was seen in Physical therapy for his right hip on December 19, 2013.

37. Plaintiff continued to submit Health Service Requests throughout 2014. In March, 2014 and April, 2014, Plaintiff received Kenalog injections in his low back which were ineffective in decreasing the pain in Plaintiff's right hip and low back.

38. In May, 2014, NP Scott Shaffer referred Plaintiff to Dr. Murray Young for an evaluation of his right hip.

39. Dr. Young saw Plaintiff on June 11, 2014 and recommended Plaintiff see an off-site specialist for his right hip and back, specifically, Dr. R. Schwartsman. Dr. Young noted that if Dr. Schwartsman wanted a new x-ray, he would have to do them at Dr. Schwartsman office and not at ISCI. On June 16, 2014, Dr. Young transcribed a note regarding Plaintiff's June 11, 2014 visit. Dr. Young was referring Plaintiff to a specialist, Dr. Schwartsman, for an injection in Plaintiff's right hip. However, at the appointment with Dr. Schwartsman, Plaintiff states that Dr. Schwartsman would not do an injection until he knew what the problem was and then ordered an MRI.

40. On June 30, 2014, Plaintiff was seen by Dr. R. Schwartsman. After an evaluation and x-rays of Plaintiff's low back and hip, Dr. R. Schwartsman recommended that an MRI be done on Plaintiff's right hip. Plaintiff was to return to Dr. Schwartsman after the MRI was conducted.

41. On July 24, 2014, nearly a month after Plaintiff's appointment with Dr. Schwartsman, Defendant Gelok, following the recommendation of the specialist, requested the MRI of Plaintiff's right hip. The specialist, Dr. Schwartsman was chosen by Dr. Young but this request was denied by Dr. Young on July 28, 2014.

42. Defendant Gelok submitted a new request for an MRI which was then denied by Corizon Corporate.

43. On September 18, 2014, three (3) months after Dr. Schwartsman recommended an MRI and eight (8) years after the initial injury, Plaintiff received an MRI of his right hip.

44. Plaintiff received the MRI only after he, as a Balla representative, had personal contact with IDOC Contract Monitors during monthly nurse monitor meetings. On behalf of Plaintiff and to comply with policy concerning continuity of care with an off-site specialist, Megan Austin pursued the approval of Plaintiff's recommended MRI.

45. Defendant Gelok reviewed the MRI results on October 1, 2014 and told Plaintiff that there was some degenerative bone present in Plaintiff's right hip, but Defendant Gelok's summation decreased the true severity of the degeneration.

46. On February 5, 2015, Dr. Schwartsman noted in Plaintiff's file that Dr. Schwartsman had reviewed the MRI results and that Plaintiff had not returned for follow-up as recommended.

47. Dr. Schwartsman noted that the MRI results showed a Total Hip Arthroplasty was warranted and recommended Plaintiff be scheduled for the total hip arthroplasty "as soon as authorization is obtained by the patient's insurer".

48. Six (6) months after the initial reading of the MRI by Defendant Gelok, an addendum to the MRI was discovered. The MRI report had been provided to Defendants and the addendum, dated September 14, 2014 was signed by Defendant Gelok on February 9, 2015 and placed in Plaintiff's medical file with no communication of the contents to Plaintiff until April 6, 2015.

49. Attention was not given to the addendum until Plaintiff requested an appointment on April 6, 2015.

50. During a Balla meeting, when questioned about overriding recommendations of a specialist, Defendant Dr. Young stated specialists tend to go straight to surgery as that is how they make their money. Dr. Young opts for conservative treatment.

51. Plaintiff did not receive any further conservative treatment following the recommendation of surgical intervention by Dr. Schwartsman. Plaintiff had had years of unsuccessful conservative treatment, prior to his appointment with the specialist chosen by Defendant Dr. Young.

52. Plaintiff was told on more than one occasion that his injury was soft tissue and there was nothing further, beyond ibuprofen and exercises, that could be done to relieve the pain in his right hip and low back.

53. Plaintiff made an attempt to "live with the pain" but the pain was constant and continually worsened as time passed.

54. After several years of unsuccessful conservative treatment, continual pain and discomfort in Plaintiff's right hip, a total hip arthroplasty was performed by Dr. R. Schwartsman on June 8, 2015. This was nearly one (1) year after Plaintiff's initial visit with Dr. R. Schwartsman and over nine (9) years after the initial injury.

55. Plaintiff never demanded medical attention above the expected standard of care. Plaintiff consistently complained of pain and significant discomfort in his right hip and low back for nearly nine (9) years. Advanced diagnostic testing was available for use from the onset of Plaintiff's right hip injury. Plaintiff complied with the recommendations of Corizon's medical personnel with little to no success. Unable to get a second opinion or schedule his own appointment with a specialist, Plaintiff was at the mercy of Corizon's policies and procedures and medical personnel.

56. Years of Corizon's conservative treatment did not change Plaintiff's pain and his hip condition continued to deteriorate to the point of being classified as severe which required a total hip arthroplasty instead of a potentially less invasive surgery at a young age.

57. Idaho Department of Corrections (hereinafter IDOC) has the responsibility to provide reasonable medical care to its inmates. IDOC has elected to contract with Corizon for the provision of its medical care to its inmates. IDOC has not relinquished and/or divested itself of its duty and obligation to provide medical care. IDOC still has the overall duty to provide reasonable medical care to its inmates. IDOC has personnel that supervise the medical care and the medical processes that Corizon provides.

58. IDOC personnel, such as, Warden Kieth Yordy and Rona Siegert have the duty and obligation to ensure reasonable medical care is provided to the inmates via Corizon or some other source.

## V. **PRELIMINARY STATEMENT**

59. The Actions of these Defendants were in Violation of the Eighth Amendment of the United States Constitution; Mr. Ellis had the Right to be free of cruel and unusual punishment and the deprivation of medical services while in prison and under the care and custody of the State Of Idaho. The deprivation of proper medical care and treatment is fact and there is no administrative grievance procedure that Mr. Ellis need exhaust. However, Mr. Ellis in an effort to receive proper medical care, treatment, and make aware Corizon and its medical staff did submit a KITE and a grievance form.

60. He is entitled to proceed at this time pursuant to § 1983 of Title 42 of the United States Code and Idaho Code § 6-1001 *et seq*. He is presently incarcerated at the Idaho State Correctional Institute in Ada County, State of Idaho.

## VI. CLAIMS FOR RELIEF

A. <u>The Amount of Damages Claimed</u>

61. Damages for his hip and back injuries, all special and general damages are in the total sum as under the law of the State of Idaho for personal damages and injuries in a total of not less than five hundred thousand dollars. ($500,000.00)

B. <u>The Residence of the Claimant at the Time of Filing the State Claim Notice</u>

62. At the time and date of the filing of the Notice of Tort Claim, the claimant is an inmate at the Idaho State Correctional Institute, Boise, Idaho; Mr. Ellis has been housed for some time at this institute; at all times relevant he has been a citizen and resident of the State of Idaho. Mr. Ellis has complied with Idaho Code § 6-1001 Et. Seq. Mr. Ellis' reserves the right to amend this complaint to add additional state court claims per federal procedure.

63. The violation of Mr. Ellis' right to have proper and adequate medical care and treatment had both an objective and subjective component. Mr. Ellis' hip and back injuries were serious medical needs and the Defendants have a culture, policies, procedures, and processes that promote deliberate indifference to offenders' serious medical needs. Furthermore, the defendants knew of and disregarded Mr. Ellis' serious medical need by failing to take reasonable measures to address Mr. Ellis' hip and back injuries and to protect Mr. Ellis from further harm. Defendants knew and ignored the excessive risk to Mr. Ellis' health and safety, to satisfy the subjective component of the law. Thus the requirements of *Estelle and Gamble*, 429 US 97 (1976) have been satisfied. See also *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Farmer v. Brennan*, 511 U.S. 825 (1994). These defendants conducted themselves with deliberate indifference to the serious medical needs of Mr. Ellis, which constituted

unnecessary and extreme infliction of pain as proscribed by the Eighth Amendment of the United States Constitution. Any reasonable medical doctor, medical professional, or prison official would have perceived Mr. Ellis' medical needs as important and worthy of treatment immediately so Mr. Ellis would not have excessive, long-term pain and subsequent total hip replacement at an unusually young age; his medical condition has drastically changed his daily activities and has resulted in chronic and life enduring pain. Mr. Ellis presented a condition of urgency which produced degeneration and extreme pain, which in fact did occur; he suffers past, present and future physical and mental impairment and objective loss by reason of his hip and back injuries for the remainder of his natural life.

64. At all material times herein, Defendant Murray Young was the regional medical director for Corizon and the ultimate responsibility for the medical care and treatment of inmates at ISCI lied with Defendant Dr. Young.

C. Deliberate Indifference of These Defendants

65. These Defendants were deliberately indifferent to the immediate medical needs of Mr. Ellis; his extreme physical and mental pain and agony was obvious; they failed to even diagnose his condition let alone provide treatment for it; they delayed a proper diagnosis and utilization of diagnostic tests to properly diagnose and made in effect, "medical" judgments which were so erroneous as not to be medical judgments at all. Mr. Ellis repeatedly requested immediate medical treatment and diagnostic testing but received nothing. As a result, the deliberate indifference and delay caused pain and suffering of Mr. Ellis and an early total hip replacement. There was no legitimate reason, medically or otherwise, for any delay in his treatment. Mr. Ellis was denied access to diagnostic tests and proper treatment. Defendants deliberately and indifferently refused to perform the appropriate diagnostic tests and treat him

based upon proper testing.  The Defendants made medical decisions based upon non-medical factors which constituted deliberate indifference including systemic deficiencies in medical care and treatment, staffing, facilities, and procedures which directly resulted in cruel and unusual treatment and additional punishment.

66.  The indifference and indeed the lackadaisical approach of Defendants to medical diagnostics and treatment of Mr. Ellis was and is, horrific.

## VII.   PRAYER FOR RELIEF

Accordingly, Mr. Ellis requests that the court enter a Judgment and Order:

1. Awarding Mr. Ellis compensatory damages for past and future pain, suffering, embarrassment, humiliation, mental anguish and past and permanent impairment, including loss of earning capacity and reasonable value of all medical care and supplies; and a reasonable value of legal services that he needed and obtained by his attorneys.

2. Awarding Mr. Ellis of punitive damages against non-governmental persons for these Defendants' conduct that was intentional, reckless, malicious, or callously indifferent to Mr. Ellis' protected rights and needs. That the sum of which is not controlled by notice or administrative law either State or Federal but in the manifest discretion of this court and a jury.

3. Awarding Mr. Ellis prejudgment and post-judgment interest plus any reasonable costs of collection of the judgment.

4. Awarding attorney's fees, costs and other relief to which he is entitled.

PLAINTIFF DEMANDS A JURY TRIAL FOR ALL CLAIMS AND CAUSES OF ACTION TRIABLE BY JURY IN ACCORDANCE WITH THE LAW OF THE UNITED STATES OF AMERICA.

///

Dated this 30th day of January, 2017.

_____/s/_____
Ryan T. Earl
Attorney for Plaintiff

# VERIFICATION

STATE OF IDAHO )
                      )ss
COUNTY OF ADA )

KENT R. ELLIS, being first duly sworn upon oath, says:

That he has read the above foregoing Amended Complaint; that he knows the contents thereof and believes that the facts stated herein are true.

_____
KENT R. ELLIS

SUBSCRIBED AND SWORN to before me this 20 day of January, 2017.

NOTARY PUBLIC FOR IDAHO

_____
Notary for Idaho
Residing at: Idaho
Commission Expires: 8/14/2020

**VERIFIED FIRST AMENDED COMPLAINT 1**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2017 I electronically filed the foregoing document with the U.S. District Court. Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

| Dylan A. Eaton<br>J. Kevin West<br>Parsons, Behle & Latimer<br>800 W. Main Street, Suite 1300<br>Boise, Idaho 83702 | _____ U.S. Mail<br>_____ Overnight Mail<br>_____ Hand Delivery<br>_____ Facsimile (208) 562-4901<br>_____ Email<br>\_\_X\_\_ ECF |

                                                  \_\_\_\_\_/s/_____
                                                  Ryan T. Earl