UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT RICHARD ELLIS, | Case No. 1:15-cv-00304-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| CORIZON, INC.; DR. YOUNG; NP SEIGERT; P.A. TAKAGI; N.P. GELOK; NP SHAFFER, | |
| Defendants. | |

## INTRODUCTION

Before the Court is Defendant Rona Siegert's[1] ("Siegert") Motion for Summary

Judgment. Dkt. 97. The Court will also consider Kent Richard Ellis' ("Ellis") Motion

for Leave to File Under Seal Plaintiff's Response to Defendant Siegert's Motion for

Summary Judgment. Dkt. 101. The Court GRANTS Siegert's Motion for Summary

Judgment (Dkt. 97) and DENIES IN PART and GRANTS IN PART Ellis' Motion for

---

[1] The Court notes that the docket spells Defendant Siegert's name as "Seigert." Based on Siegert's filings however, it appears that her name is spelled "Siegert." The Court will use the correct spelling.

Leave to File Under Seal Plaintiff's Response to Defendant Siegert's Motion for Summary Judgment (Dkt. 101).

Also before the Court is an Amended Motion for Summary Judgment of Defendants Corizon, LLC, Dr. Murray Young, Nurse Practitioner Christian Gelok, Nurse Practitioner Scott Schaffer[2], and Physician's Assistant Michael Takagi (collectively, "Corizon Defendants"). Dkt. 99. The Court will also consider Ellis' Motion for Leave to File Plaintiff's Response to Defendant Corizon, Et. Als' [*sic*] Motion for Summar [*sic*] Judgment Under Seal. Dkt. 104. For the reasons set forth below, the Court GRANTS the Corizon Defendants' Amended Motion for Summary Judgment (Dkt. 99) and DENIES IN PART and GRANTS IN PART Ellis' Motion for Leave to File Plaintiff's Response to Defendant Corizon, Et. Als' [*sic*] Motion for Summar [*sic*] Judgment Under Seal. Dkt. 104.

## BACKGROUND

This section includes facts that are undisputed and material to the resolution of the issues in this case. Pursuant to District of Idaho Local Civil Rule 7.1(b)(1), Siegert filed a Statement of Undisputed Material Facts ("Siegert Statement"). Dkt. No. 97-2. The Corizon Defendants also filed an Amended Statement of Undisputed Facts ("Corizon Statement"). Dkt. No. 99-2. In response to the Siegert Statement, Ellis filed a Disputed

---

[2] The Court notes that the docket spells Defendant Schaffer's name as "Shaffer." Based on N.P. Schaffer's filings however, it appears that his name is spelled "Schaffer." The Court will use the correct spelling.

Statement of Material Facts. Dkt. No. 102-12. And, in response to the Corizon Statement, Ellis filed a separate Disputed Statement of Material Facts. Dkt. No. 105-10. The Court will note the areas where Ellis disputes facts appearing in the Siegert Statement and the Corizon Statement. It will accept as true Ellis' version of the disputed facts for purposes of this decision.

## 1. Ellis' Patient History

Ellis complains that Siegert and the Corizon Defendants consistently ignored and misdiagnosed an injury to his lower back and right hip. Ellis was injured during a game of pick-up basketball in late November or early December of 2006, while he was an inmate at the Bill Clayton Detention Center in Texas. Dkt. 102-11 at ¶ 5; Dkt. 105-10 at ¶ 2. Ellis was transported to the medical unit at the time of his injury and was prescribed crutches, which he used for a couple of weeks. Dkt. 99-4 at 18, *Deposition Transcript of Kent Ellis* ("*Ellis Depo.*"), p. 66:8-17. Ellis also received an x-ray. Dkt. 99-4 at 18, *Ellis Depo.*, p. 66:18-67:23.

Roughly 20 months later, on August 27, 2008, Ellis complained to the medical staff in Texas about pain in his hip related to his basketball injury. Dkt. 99-9 at 17. The medical staff member noted that Mr. Ellis had tenderness along his right hip and pain associated with his full range of motion. Dkt. 99-9 at 17. The staff member ordered that Ellis be referred to a doctor[3] for further evaluation and prescribed Tylenol for ten days.

---

[3] The Parties do not point the Court to any evidence regarding whether this consultation occurred.

Dkt. 99-9 at 17. Ellis was transferred back to Idaho on September 30, 2008. Dkt. 99-8 at 35. No injury or issues related to Ellis' lower back or hip were noted on his Medical Information Transfer Form. Dkt. 99-9 at 39.

On October 15, 2008, just fifteen days after arriving in Idaho from Texas, Ellis complained to medical personnel about lower back pain related to his basketball injury. Dkt. 99-8 at 34. He was prescribed ibuprofen along with a muscle relaxer (Dkt. 99-8 at 34) and told to follow up in thirty days (Dkt. 99-8 at 34). Sixty-one days later, on December 2, 2008, Ellis was seen by Nurse Practitioner David Foss for complaints about lower back and right hip pain. Dkt. 99-8 at 33. N.P. Foss physically examined Ellis but did not find any abnormalities with Ellis' spine or reflexes. Dkt. 99-8 at 33. Nevertheless, N.P. Foss ordered an x-ray of Ellis' lumbar, spine, right hip, sacrum, and coccyx. Dkt. 99-8 at 33; Dkt. 99-9 at 12. Examining the x-ray, the radiologist found evidence of early degenerative articular cartilage loss, minimal disc space narrowing at L5-S1, and marginal osteophytosis at L4-5. Dkt. 99-9 at 12. The sacrum, pubic symphysis, and SI joints appeared normal. Dkt. 99-9 at 12.[4]

On August 2, 2009, roughly nine months after Ellis was examined by N.P. Foss, he filled out a health service request form asking for medication for his back pain. Dkt.

---

[4] Ellis' 2008 x-ray was never compared to the 2006 x-ray taken in Texas at the time of his initial fall because it apparently was not transferred with him to Idaho. To date, the 2006 x-ray has not been obtained by IDOC. It is likely unobtainable due to the closure of the Bill Clayton Detention Center. Dkt. 99-2 at ¶ 2 n.2. During the Court's October 13, 2018 hearing in this matter, Corizon Defendants' counsel stated that he tried to obtain these records but was unsuccessful in doing so.

99-7 at 22. Eleven days later, on August 13, 2009, Ellis was seen by P.A. Michael Takagi. Dkt. 99-8 at 32. During that visit, Ellis complained about back pain arising from a fall on the basketball court. Dkt. 99-8 at 32. P.A. Takagi examined Ellis and prescribed ibuprofen, after finding that Ellis had normal reflexes and appeared to be well functioning. Dkt. 99-8 at 32; Dkt. 99-9 at 10. P.A. Takagi offered to have Ellis relieved from work duty, but Ellis declined. Dkt. 99-8 at 32; Dkt. 97-5 at 30, *Ellis Depo.*, p. 95:10-16.

From August 13, 2009 to October 21, 2011, the only specific complaint made by Ellis regarding pain in his lower back or hip came on September 21, 2010 when he reported on a facility transfer form that he had chronic pain in his back, which he rated as 6/10. Dkt. 99-6 at 5. During that period, he attempted to continue to "play several sports [after] the injury" even though his ability to do so was "diminished in a lot of ways." Dkt. 97-5 at 30, *Ellis Dep.* 96:23-97:13. During a softball game in June 2011, Ellis tore his rotator cuff, for which he underwent surgery on October 3, 2012. Dkt. 99-7 at 43.

At the same time he was receiving treatment for his shoulder, Ellis completed a health service request regarding pain in his lower back and hip on October 21, 2013. Dkt. 99-7 at 15. After being seen by a nurse practitioner on November 4, 2013, an x-ray of Ellis' pelvis and right hip was ordered, along with physical therapy. Dkt. 99-8 at 22. Ellis continued to receive physical therapy, and on December 13, 2013, N.P. Schaffer followed up with Ellis about his x-ray results, which showed mild degenerative change in

Ellis' right hip, but little interval change compared to the x-ray performed on Ellis in 2008. Dkt. 99-6 at 6; Dkt. 99-8 at 20.

Ellis subsequently complained on March 2, 2014 that he was continuing to experience pain in the right side of his back and right hip despite physical therapy and the medications he had been prescribed. Dkt. 99-7 at 13-14. Ellis received a steroid injection on March 21, 2014, Dkt. 99-8 at 16, and, despite reporting some initial relief, subsequently complained again on May 19, 2014 that he was still in pain. Dkt. 99-6 at 46. On May 30, 2014, Ellis saw N.P. Schaffer, who referred Ellis for an appointment with Regional Medical Director Dr. Murray Young. Dkt. 99-8 at 14-15.

Dr. Young examined Ellis on June 11, 2014. Dkt. 99-8 at 13. Noting that Ellis was experiencing pain in his hip area, Dr. Young referred Ellis to Dr. Roman Schwartsman, an offsite orthopedic surgeon. Dkt. 99-8 at 13. Dr. Schwartsman examined Ellis on June 30, 2014. Dkt. 99-7 at 38. After noting that the x-rays in Ellis' right hip and pelvis showed moderate degenerative changes, Dr. Schwartsman recommended an MRI. Dkt. 99-7 at 38. The MRI was subsequently requested by N.P. Gelok after a follow-up appointment with Ellis on July 11, 2014. Dkt. 99-7 at 36-37. Initially, Dr. Young denied the request for an MRI on July 24, 2014. Dkt. 99-7 at 36. But, the MRI was approved less than a month later (Dkt. 99-2 at ¶ 30) and was completed on September 18, 2014. According to Dr. Dallas Peck, the first radiologist to review the MRI, the MRI revealed "moderate right hip joint degenerative change" but no evidence of a ligament tear. Dkt. 99-7 at 35.

Ellis subsequently met with N.P. Gelok on October 1 and December 4, 2014. Dkt. 99-8 at 9, 11. On February 5, 2015, Dr. Schwartsman wrote a note indicating that he disagreed with Dr. Peck's assessment of the damage in Ellis' hip as "moderate." Dkt. 99-7 at 26. In Dr. Schwartsman's opinion, the degenerative change was severe, and a labral tear was present. Dkt. 99-7 at 26. Dr. Schwartsman subsequently spoke with a different radiologist, Dr. Shane McGonegle, who agreed with Dr. Schwartsman's diagnosis. Dkt. 99-7 at 28-29. On February 5, 2015, Dr. McGonegle prepared an addendum to the original MRI report stating that the MRI showed severe degeneration in the right hip and a significantly torn labrum. Dkt. 99-7 at 28-29. On April 30, 2015, N.P. Gelok met with Ellis to inform him about the addendum and ordered a total right hip arthroplasty, which Dr. Schwartsman performed on June 8, 2015. Dkt. 99-6 at 34; Dkt. 99-8 at 7.

## 2. Siegert's Job Responsibilities And Oversight Of The Corizon Defendants' Treatment Of Mr. Ellis

Siegert is a registered nurse with over 40 years of experience. Dkt. 97-6 at ¶ 2. For the last ten years Siegert has been employed as the Health Services Director by the Idaho Department of Corrections ("IDOC"). Dkt. 97-6 at ¶ 2, 3. As Health Services Director for IDOC, Siegert does not provide direct medical care to inmates (Dkt. 97-6 at ¶ 4, 9), except in the event of "fire, riot, or similar disturbances" in which case she is responsible for "direct[ing] and coordinat[ing]" emergency medical services. Dkt. 102-2. Instead, Siegert oversees and assesses the effectiveness of IDOC's delivery of healthcare services to inmates. Dkt. 102-12 at ¶ 3; Dkt. 102-2. The majority of medical care provided to inmates by IDOC is delivered through Corizon. Dkt. 97-6 at ¶ 3.

As part of her supervision of the health care delivered by Corizon on IDOC's behalf, Siegert serves as the Level 3 appellate authority for grievances filed by inmates. Dkt. 97-6 at ¶ 3. As Level 3 appellate authority, Siegert researches concerns raised by inmates. Dkt. 97-6 at ¶ 4. This investigation includes a review of the aggrieved inmate's medical records. Dkt. 97-6 at ¶ 4. After reviewing an inmate's medical records, Siegert may follow up with Corizon's administrative and medical staff. Dkt. 97-6 at ¶ 4.

Siegert's first meeting with Ellis occurred around June 14, 2014.[5] Dkt. 97-5 at 50, *Ellis Depo.*, p. 177:13-16. Siegert and Ellis met regarding the MRI that Dr. Schwartzman had requested but that, as of that time, had not been completed. Dkt. 97-4 at 10, *Deposition Transcript of Rona Siegert* (hereinafter, "*Siegert Depo.*"), p. 32:10-33:13. After their discussion, Siegert met with either Dr. Young or Corizon Regional Director of Nursing Connie Smock regarding Ellis. Dkt. 97-4 at 11-12, *Siegert Depo.*, p. 40:1-42:13. The exact contents of that discussion are unknown, but Ellis' MRI was subsequently performed on September 18, 2014. Dkt. 99-7 at 35.

According to Ellis' testimony, Siegert first learned that his hip injury had been misdiagnosed between February 9, 2015 (the date Dr. McGonegle signed the addendum to the MRI report) and April 30, 2015 (the date Ellis' surgery was initially scheduled).

---

[5] Siegert states during the deposition that she believes she first met Ellis in 2015. Because she testifies that her first conversation with Siegert dealt with the MRI which was yet to the be scheduled, it is more likely that the conversation took place in June 2014. This accords with Ellis' testimony. Dkt. 97-5 at 50, *Ellis Depo.*, p. 177:13-16. Pursuant to Rule 56, the Court will use this date.

Dkt. 97-5 at 51, *Ellis Depo.*, p. 178:25-180-16.  After learning about Ellis' misdiagnosis, Siegert's next interaction with Ellis occurred on May 28, 2015, when Siegert received, in her capacity as the Level 3 appellate authority for medical grievances, a grievance from Ellis regarding the scheduling of his hip surgery.  Dkt. 97-7 at 2-3.  Siegert reviewed Ellis' medical record and, despite the fact that her response was not due until June 13, 2015, informed Ellis in her June 2, 2015 response that surgery had been scheduled for June of 2015; Siegert noted that there had been "some issues in you receiving a timely work up for hip pain."  Dkt. 97-7 at 3.  Dr. Schwartsman performed Ellis' hip surgery on June 8, 2015.  Dkt. 99-6 at 34.

## LEGAL STANDARD

### 1. "Motion To Strike" Inadmissible Evidence At Summary Judgment Phase

In her Reply Memorandum in Support of Defendant Rona Siegert's Motion for Summary Judgment, Siegert asks this Court to "strike all inadmissible evidence offered by" Ellis in his opposition to Siegert's Motion for Summary Judgment.  Dkt. 106 at 2-4.  Similarly, Ellis has lodged objections to evidence put forth by the Corizon Defendants in support of their Amended Motion for Summary Judgment.  Dkt. 105 at 2-3.

Federal Rule 56(c) governs the procedures that the parties must comply with to support or dispute a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c).  Under Rule 56(c)(2), a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  *Id.*  An affidavit is an acceptable form in which to present evidence in the summary judgment context.

However, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Affidavits submitted by the non-moving party cannot be disregarded solely due to self-interest, *S.E.C. v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007), but a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

Rule 56 makes clear then that only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c). However, in determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment. *Id.*

As to the parties filing motions to strike as a means of objecting to the evidence submitted in support of or against a pending motion for summary judgment, the Advisory Committee Notes to the most recent amendments to Rule 56 provide that a Rule 56(c)(2) objection "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate

motion to strike." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments). Motions to strike are limited to pleadings, which are defined by Federal Rule 7(a); affidavits and exhibits filed in support of, or in opposition to, a motion for summary judgment are not pleadings. *See Albertson v. Fremont County, Idaho*, 834 F. Supp. 2d 1117, 1123 n.3 (D. Idaho 2011). Thus, the motions to strike filed in this case will be construed as objections to the materials filed by the opposing party.

## 2. Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted). Rather, there must be no genuine dispute as to any material fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary

judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb [through] the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

### 3. Deliberate Indifference Standard

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" because of a defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on*

*other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).  The Eighth

Amendment includes the right to adequate medical care in prison, and prison officials or

prison medical providers can be held liable if their "acts or omissions [were] sufficiently

harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*,

429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme

Court of the United States has explained that "[b]ecause society does not expect that

prisoners will have unqualified access to health care, deliberate indifference to medical

needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The Ninth Circuit has defined a "serious

medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury
> or the unnecessary and wanton infliction of pain [;] ... [t]he existence of an injury
> that a reasonable doctor or patient would find important and worthy of comment
> or treatment; the presence of a medical condition that significantly affects an
> individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

(*en banc*).

As to the subjective standard, "deliberate indifference entails something more than

mere negligence, [but] is satisfied by something less than acts or omissions for the very

purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at

835.  A prison official or prison medical provider acts with "deliberate indifference ...

only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show "a purposeful act or failure to respond to a prisoner's pain or possible medical need and ... harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested

by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)); *see also Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the [medical] professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances.").

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not violate the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1059. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious

disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

### 4. Qualified Immunity Standard

The Supreme Court has instructed that rulings on the qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive," *Saucier v. Katz*, 533 U.S. 194, 200 (2001), inasmuch as the defense is "an immunity from suit rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id.* True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation omitted).

The threshold question in considering application of the qualified immunity defense is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [defendant's] conduct violated a constitutional right?"

*Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  If, viewing the alleged injuries in a light most favorable to the non-moving party, the Court finds that a constitutional right does not appear to have been violated, the moving party is entitled to qualified immunity.  *Id.*

## 5.  Motion To Seal Standard

"[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  Parties must "overcome[ ] this strong presumption" of public access when seeking to maintain the confidentiality of judicial files and records.  *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  A party seeking to seal documents attached to a dispositive motion has the burden of demonstrating "compelling reasons" for protection that outweigh the public interest.  *Id.* at 1178-79.

## ANALYSIS

## 1.  The Parties' Evidentiary Objections

### a.  The Court Will Not Consider Certain Evidence Put Forth By Ellis

The Court will first determine what evidence put forth by Ellis is properly before it.  Siegert objects to (1) statements contained in Ellis' Disputed Statement of Facts and (2) statements contained in Ellis' Affidavit.  Dkt. 106 at 2-4.  Additionally, Siegert objects to the Court's consideration of Ellis exhibits 1, 2, 3, 4, 7, 8, and 9.

1)  Siegert's Objections to Statements in Ellis' Disputed Statement of Facts

i.     Paragraphs 5-6: Siegert objects that paragraphs 5 and 6 are "simply attorney statements that do not cite to any actions in the record purportedly taken or not taken by Ms. Siegert. Siegert's objection is not well taken. Paragraphs 4 and 5 cite to Ellis Exhibits 3 and 4. Both exhibits are arguably relevant to the scope of Siegert's duty to ensure that Ellis received adequate healthcare. *Gray v. Shedd*, No. 3:11-CV-00002-BLW, 2012 WL 3149264, *2-3 (D. Idaho Aug. 1, 2012).

ii.    Paragraph 8: Siegert objects that Ellis provides no evidence that medical records from his time in Texas exist other than his own statement. Siegert's objection is not well taken. The Parties do not dispute that Ellis received at least some medical care during his time in Texas. Furthermore, during the Court's October 13, 2018 hearing the Parties both agreed that at least some of Ellis' medical records from Texas had been produced by the defendants. To the extent that Ellis' 2006 x-ray was not among those documents, Ellis' medical records from his time in Texas were incomplete when they were transferred with him to Idaho.

iii.    Paragraph 10: Siegert objects to paragraph 10's implication that Ellis' medical records were a mess. Paragraph 10 cites deposition testimony from N.P. Foss, who was formerly employed by Corizon and saw Ellis at least once. Siegert's objection is not well taken. Although N.P. Foss does not specify that Ellis' records were a mess, his generalization with respect to the state of records kept by Corizon can be interpreted to cover Ellis' records. Dkt. 102-7 at 7, *Deposition of David T. Foss* (hereinafter, "*Foss Depo.*"), p. 24:5-25:2. At the summary judgment stage, Ellis is entitled to this inference.

iv.    Paragraph 14: Siegert objects to Paragraph 14's characterization of Ellis Exhibit 9. The Court will rely on the actual contents of Ellis Exhibit 9. Dkt. 102-10.

v.    Paragraph 15: Siegert objects to paragraph 15's statement that "There was no follow-up from the December 2008 medical visit and no other diagnostic testing was completed to determine the cause of Ellis' hip pain until 2014." Siegert's objection is well taken. On August 13, 2009, Ellis met with P.A. Takagi regarding pain. Dkt. 99-9 at 10.

vi.    Paragraph 16: Siegert objects to paragraph 16's statement that "Ellis was told by a medical provider that there was nothing that can be done for his hip pain and that he would simply have to live with the pain." Siegert's objection is well taken. Aside from Ellis' affidavit, there is no evidence to corroborate this statement. Critical information regarding (1) which medical provider or providers made this statement and (2) when the statement or statements were made is lacking. The Ninth Circuit has previously found that affidavits submitted by the non-moving

party cannot be disregarded due to self-interest, *Phan*, 500 F.3d at 909-10, but a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Publ'g Clearing House, Inc.*, 104 F.3d at 1171. Absent any additional evidence or more specificity from Ellis regarding who made these statements to him, the Court finds that this is a conclusory restatement of Ellis' complaint.

vii.     Paragraph 17: Siegert objects to paragraph 17 because no evidence is provided to support the statement that "In August of 2008, Mr. Ellis was seen by a P.A. where Mr. Ellis complained of back and hip pain, which had lasted for two to three years." As support for this statement, Ellis cites simply to "Exhibit 5", which is a deposition transcript of a Rule 30(b)(6) deposition of Corizon. Although Ellis' bald citation does little to "direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co.*, 336 F.3d at 889, the Court believes that Ellis is referencing the care he received while he was an inmate in Texas. Dkt. 99-9 at 17. Siegert's objection is therefore not well taken.

viii.    Paragraph 19: Siegert objects to Ellis' assertion that Siegert is "aware of the ongoing constitutional problems in the delivery of healthcare to inmates under the care and custody of IDOC" through her service on the *Balla* special master committee. Although the record supports the conclusion that Ellis raised some concerns related to his MRI during or after a *Balla* meeting, Dkt. 97-5 at 14, *Siegert Depo.*, p. 32:10-33:13, Ellis himself testified that Siegert became aware of his misdiagnosis outside of the context of *Balla*. Dkt. 97-5 at 51, *Ellis Depo.*, p. 178:25-180-16. Thus, Siegert's participation in *Balla* has only the most minimal relevance to the facts of this case. Nevertheless, Siegert's objection is not well taken to the extent she gained knowledge about the delays in scheduling Ellis' MRI during or shortly after a *Balla* meeting.

ix.      Paragraphs 20-22: Paragraphs 20 through 22 are a recitation of Ellis' claims against Siegert. Paragraphs 20 and 21 are supported solely by the Ellis' affidavit. Dkt. 102-12 at 4-5. Paragraph 22 is unsupported. For the reasons discussed in the Court's evaluation of Paragraph 16, the Court finds that Siegert's objection is well taken.

2) Siegert's Objections to Statements in Ellis' Affidavit

i.       Paragraph 6: Pursuant to the Court's discussion of paragraph 8 of Ellis' Disputed Statement of Facts, the Court finds that this statement is properly supported.

ii.      Paragraph 9: Siegert objects that Ellis' statement that he "continued to complain of pain in … [his] hip for years, many of these complaints are not properly

documented in … [his] medical records' is not supported by anything other than Ellis' assertion.  Pursuant to the Court's discussion of paragraph 16 of Ellis' Disputed Statement of Facts, Siegert's objection is well taken.

iii.   Paragraph 14:  Siegert objects to Ellis' statement that he "requested an MRI of … [his] hip throughout the years due to the continued pain with no definitive diagnosis, each request was denied" on the basis that it is not supported by anything other than Ellis' assertion.  Pursuant to the Court's discussion of paragraph 16 of Ellis' Disputed Statement of Facts, Siegert's objection is well taken.

### 3)  Siegert's Objections to Exhibits 1, 2, 3, 4, 7, 8, and 9

Siegert objects to each of the listed exhibits because "Plaintiff's counsel lacks the personal knowledge to lay foundation as to the purported exhibits … [and the exhibits'] documents are also not appropriate for judicial notice."  Siegert objection is not well taken.  With respect to Exhibits 1, 2, 3, and 4, Ellis' attorney, Brian Hefner, alleges that the exhibits are (1) true and correct copies of (2) materials from various Idaho state bureaucracy websites (3) created on August 8, 2018.  Mr. Hefner further claims that he has personal knowledge as to each of these facts.  This is sufficient to meet Federal Rule of Evidence 901(a)'s requirements at this stage of the litigation.

Similarly, Mr. Hefner alleges that he personally knows that Exhibits 7, 8, and 9 are true and correct copies of Ellis' medical records.  This is sufficient for purposes of Federal Rule of Evidence 901(a) at this stage of the litigation.

### b.  The Court Will Consider All Of The Evidence Put Forth By The Corizon Defendants

The Court will next determine what evidence put forth by the Corizon Defendants is properly before it.  Ellis objects to the Corizon Defendants' use of (1) medical records

related to care he received *after* his hip surgery and (2) testimony from Dr. Schwartsman. Dkt. 105 at 2. Ellis also argues that the Corizon Defendants have filed an overlength statement of undisputed facts. Dkt. 105 at 3.

1) Ellis' Objections to the Corizon Defendants' Use of Medical Records Associated with His Hip Surgery

Ellis' first objection is that the medical records (Dkt. 99-10 & 99-11) put forth by the Corizon Defendants relating to care after his hip surgery are irrelevant and inadmissible under Federal Rules of Evidence 401 and 402 and unduly prejudicial under Federal Rule of Evidence 403. The Corizon Defendants counter by arguing that the care Ellis received after his hip surgery, which included spine surgery in 2018 (Dkt. 99-10, Ellis MR-00789), is relevant because it points to an alternative culprit for his hip degeneration; namely, slow progressing osteoarthritis. Dkt. 109 at 5.

The Court agrees with the Corizon Defendants that the evidence is relevant and not unduly prejudicial. Ellis repeatedly puts the treatment he received for his back at issue in his Amended Complaint. Dkt. 54, ¶¶ 25, 29, 34, 37, 40, 55, 63. Furthermore, to the extent that that the exhibits support an argument that it was not the deliberate indifference of the Corizon Defendants that caused Ellis' to require a total hip replacement, but was instead slowly progressing osteoarthritis, that evidence is relevant to Ellis' claims.

2) Ellis' Objection to Testimony from Dr. Schwartsman

Ellis' second objection is to paragraph 37 of the Corizon Defendants Amended

Statement of Undisputed Facts in Support of Motion for Summary Judgment. Dkt. 99-2

at 9. Paragraph 37 includes the following statement:

> Dr. Schwartsman believes that if there was a <u>small</u> tear of the labrum, surgery
> would not have been indicated. (Schwartsman Tran., p. 38). Additionally, Dr.
> Schwartsman believes that a general practitioner reading the original MRI report
> would be left to conclude that this patient is best managed conservatively, such as
> with anti-inflammatories or physical therapy. (Schwartsman Tran., p. 39). Dr.
> Schwartsman did not believe the original radiologist's report supported a surgery
> and that is why he called the radiologist to discuss the report and convinced the
> radiologist to add the addendum, which he then thought justified the total right hip
> surgery. (Schwartsman Tran., p. 52).

Dkt. 99-2 at 9. Ellis objects to Dr. Schwartsman's testimony under Federal Rules of

Evidence 602 and 701. Dkt. 105 at 2. Specifically, Ellis maintains that Dr.

Schwartsman's testimony (1) improperly speculates as to what a general practitioner

would think and (2) is improper opinion testimony that has not been timely disclosed.

Dkt. 105 at 2.

Ellis' objections are not well taken. To begin with, Ellis himself disclosed Dr.

Schwartsman as an expert in response to discovery propounded by the Corizon

Defendants. Dkt. 108-3 at 107. Even if the Court concluded that Dr. Schwartsman's

testimony was not disclosed, Dr. Schwartsman's statements do not necessarily trigger the

expert disclosure requirement given their context. To recap, the first radiologist to

review the MRI ordered by Dr. Schwartsman, Dr. Peck, noted only "moderate right hip

joint degenerative change" but no evidence of a ligament tear. Dkt. 99-7 at 35. Dr.

Schwartsman disagreed with Dr. Peck's assessment, and subsequently convinced a

second radiologist, Dr. McGonegle, to write an addendum to the original MRI report

stating that the MRI showed severe degeneration in the right hip and a significantly torn

labrum.  Dkt. 99-7 at 28-29.  As such, Dr. Schwartsman's statements in paragraph 37 are

best viewed as describing the series of events that transpired in this case.  Therefore, Dr.

Schwartsman's testimony is "akin to a fact witness['] [testimony]," *Sabo v. Fiskars*

*Bands, Inc.*, No. 2:12-cv-00503-EJL, 2015 WL 12750276, at *5 (D. Idaho Dec. 4, 2015),

which is "exempt from Rule 26(a)(2)(B)'s written report requirement." *Goodman v.*

*Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).

> 3) Ellis' Objection to the Corizon Defendants' Overlength
>    Statement of Undisputed Facts

Finally, Ellis objects that Corizon Defendants' Amended Statement of Undisputed

Facts is eleven pages long, rather than the ten pages that are allowed pursuant to District

of Idaho Local Civil Rule 7.1(b)(1).  Dkt. 99-2.  The Corizon Defendants' first argument

in response is that the document would be ten pages long but for the caption.  In the

Corizon Defendants' opinion, the Statement therefore complies with the Local Rule

7.1(b)(1).  The Court disagrees; ten pages means ten pages.  Nevertheless, the Court

agrees with the Corizon Defendants that each of the Defendants was technically entitled

to file their own statement of undisputed material facts.  As such, the statements of

undisputed fact in this case from the Corizon Defendants alone could have come close to

fifty pages.  The Court will not sanction the Corizon Defendants when they have

complied with the spirit, though not the letter, of the Case Management Order governing

this litigation.  Dkt. 62 at 2 n.1 (noting that the appropriate procedure is to file a motion

for permission to file an overlength brief *prior* to filing the brief).

**2. Siegert Is Entitled To Summary Judgment**

   **a. Ellis Adequately Alleged A Claim Against Siegert Based On
      Supervisory Liability**

The Court will begin by addressing whether Ellis has adequately alleged a claim

against Siegert based on Siegert's failure to supervise the Corizon Defendants.  The Court

concludes that he has.  To start, Siegert is wrong that Ellis' claim with respect to Seigert's

failure to supervise is a "change … [in the basis] for liability" at the summary judgment

stage.  Ellis' Amended Complaint sets forth the following allegations at paragraphs 56

through 58.  Dkt. 54.

   56.   Years of Corizon's conservative treatment did not change Plaintiff's pain
         and his hip condition continued to deteriorate to the point of being
         classified as severe which required a total hip arthroplasty instead of a
         potentially less invasive surgery at a young age.

   57.   Idaho Department of Corrections (hereinafter IDOC) has the responsibility
         to provide reasonable medical care to its inmates. IDOC has elected to
         contract with Corizon for the provision of its medical care to its inmates.
         IDOC has not relinquished and/or divested itself of its duty and obligation
         to provide medical care. IDOC still has the overall duty to provide
         reasonable medical care to its inmates. IDOC has personnel that supervise
         the medical care and the medical processes that Corizon provides.

   58.   IDOC personnel, such as, … Rona Siegert have the duty and obligation to
         ensure reasonable medical care is provided to the inmates via Corizon or
         some other source.

Although Ellis' allegations regarding supervisory liability are not extensive, paragraphs 56, 57, and 58 contain allegations that Siegert had a duty to supervise the Corizon Defendants and breached that duty.

**b.  Ellis Is Entitled To Pursue A Claim Based On Supervisory Liability Against Siegert**

Siegert's next argument is that violations of IDOC policies cannot support a claim for deliberate indifference.  The Court disagrees and does not interpret Ellis' citation to the IDOC Standard Operating Procedures 401.06.03.013 and 4010.06.03.044 (Dkt.102-3 and 102-4) as identifying the *source* of the duty for Ellis' supervisory deliberate indifference claim.  Were that the case, the Court would agree with Siegert that the violation of "a state law or policy [that is more generous than the constitutionally required minimum standard of care] is insufficient to support an action under 42 U.S.C. §1983, which applies only to violations of federal law."  *Gray*, 2012 WL 3149264, at *2-3.  Instead, the Court interprets Ellis citation to IDOC Standard Operating Procedures 401.06.03.013 and 4010.06.03.044 as providing evidence with respect to the *scope* of Siegert's duty.  But, Siegert's supervisory duty flows from the Eighth Amendment; which requires, in this context, that a supervisor not participate in or direct deliberately indifferent care of an inmate, or know that an inmate is receiving deliberately indifferent care and fail to act.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**c.  Ellis Has Failed To Marshall Sufficient Evidence To Create An Issue of Material Fact With Respect To Siegert's Supervisory Performance**

Although Ellis has adequately alleged that Siegert had a duty to supervise Corizon, he fails to create an issue of material fact with respect to whether Siegert breached that duty. Critically, "because § 1983 does not permit *respondeat superior* liability, a supervisor is only subject to liability for subordinates' constitutional violations if the supervisor 'directed the violations, or knew of the violations and failed to act to prevent them.'" *Fodge v. Reinke*, No. 1:13-cv-00331-BLW, 2016 WL 1056970, at *3 (D. Idaho Mar. 14, 2016), *aff'd sub nom. Fodge v. Bossolono-Williams*, 695 F. App'x 264 (9th Cir. 2017) (quoting *Taylor*, 880 F.2d at 1045). Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton*, 622 F.2d at 460. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Here, although Siegert first met with Ellis regarding the delayed MRI in June of 2014, Dkt. 97-5 at 50, *Ellis Depo.*, p. 177:13-16, by Ellis' own admission, Siegert did not gain knowledge his misdiagnosis until February 9, 2015 at the earliest. Dkt. 97-5 at 50, *Ellis Depo.*, p. 178:25-180-16. By that point, Ellis had already received an MRI, and Dr. McGonegle had written an addendum to the MRI report at Dr. Schwartsman's request clarifying that a hip replacement procedure was required. Dkt. 99-7 at 28-29. Just four months elapsed between the moment Siegert learned about Ellis' misdiagnosis and the completion of Ellis' hip surgery.

During that time, Siegert competently performed her duties as the Level 3 appellate authority in Ellis' case. When Ellis filed a grievance with respect the Corizon Defendants' failure to immediately schedule his hip surgery, that grievance was sent to Siegert on May 28, 2015. Although her response was technically not due until June 13, 2015, Siegert responded to Ellis just four days later on June 2, 2015 that his hip surgery had been scheduled. Dkt. 97-7 at 1-3. Ellis' surgery was performed sixteen days later. Dkt. 99-6 at 36. In short, Ellis has failed to create an issue of material fact with respect to whether Siegert (1) knew about deliberately indifferent care Ellis was receiving and (2) failed to act; instead, Siegert has shown that she was "consistently responsive to [the inmate's] medical needs." *Toguchi*, 391 F.3d at 1061.

### d. Siegert Is Entitled To Qualified Immunity

Because the Court concludes that Siegert lacked knowledge of Ellis' misdiagnosis until at least February 9, 2015 and acted diligently after she gained said knowledge, the Court also concludes that Siegert is entitled to qualified immunity. In evaluating qualified immunity, courts apply a two-part test. The first step is determining whether a plaintiff has asserted a violation of a constitutional right. *Galvin v. Hay*, 361 F.3d 1134, 1139 (9th Cir. 2004), *amended & superseded on other grounds*, 374 F.3d 739 (9th Cir. 2004). If a plaintiff has not asserted a violation of a constitutional right, then the inquiry is complete and the defendant is entitled to immunity. *Saucier*, 533 U.S. at 201.

### 3. The Corizon Defendants Are Entitled To Summary Judgment

#### a. The Applicable Statute of Limitations Bars Ellis' Recovery Against Corizon Defendants for Conduct Occurring Prior to July 1, 2013

The original Complaint in this case was filed on August 6, 2015. Dkt. 3. The statute of limitations for a civil rights action under 42 U.S.C. § 1983 is governed by state law. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here). Idaho Code § 5–219 provides for a two-year statute of limitations for professional malpractice, personal injury, and wrongful death actions. Federal civil rights actions arising in Idaho are governed by this two-year statute of limitations. *Anderson v. Craven*, No. CV-07-246-S-BLW, 2007 WL 2187101, at *1 (D. Idaho July 27, 2007).

Federal law governs when the cause of action accrued, or, in other words, when the statute of limitations began running. *Elliott v. Union City*, 25 F.3d 800, 801–02 (9th Cir. 1994). The Ninth Circuit has determined that a claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). "The extent of a plaintiff's injury need not be known to trigger the start of the statute of limitations period. Rather, a plaintiff need know only that he was damaged and the cause of the damage." *Del Rosario v. Saade*, No. 1:14-cv-00155-REB, 2015 WL 4404864, at *2 (D. Idaho July 17, 2015) (*citing Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.")). Additionally, this Court has previously determined that grievances and grievance appeals filed outside of the two-year statute of limitations period for § 1983 claims cannot serve as a basis of liability. *See Mintun v. Blades*, No.

CV-06-139-S-BLW, 2008 WL 711636, at *13 (D. Idaho Mar. 14, 2008). Furthermore, allegations that specific acts of medical care fell below the constitutionally required minimum standard of care are time barred where the specific acts occurred outside of the statute of limitations period. *Hoak v. Attorney Gen.*, No. 1:12-cv-00550-BLW, 2013 WL 2382722, at *3 (D. Idaho May 29, 2013).

The foregoing authorities, suggests that on Ellis' claims accrued on approximately July 1, 2013.[6] Ellis argues to the contrary that his claims accrued on February 9, 2015 – *i.e.*, the day Corizon received Dr. McGonegle's addendum to the MRI. Dkt. 99-1 at 7-8. The Court disagrees with Ellis' argument. First, the date that the Corizon Defendants gained knowledge of the true extent of Ellis' hip injury is irrelevant. *See Kimes*, 84 F.3d at 1128 (focusing statute of limitations inquiry on the date the *plaintiffs* in the case learned about the conduct at issue). Second, even if the Court focused on the date *Ellis* learned about the MRI results, April 30, 2015, it still would not find that Ellis' claims accrued on that date. Dkt. 99-6 at 34.

As has been held in other cases in this District, "[t]he extent of a plaintiff's injury need not be known to trigger the start of the statute of limitations period. Rather, a plaintiff need know only that he was damaged and the cause of the damage." *Del Rosario*, 2015 WL 4404864, at *2. By July 1, 2013, under Ellis' own theory of the case,

---

[6] The July 1, 2013 accrual date accounts for (1) the two-year statute of limitations period, (2) 30 days for Ellis to exhaust his treatment claims through the prison medical grievance system, (3) and 7 days to account for the mailbox rule.

he had received approximately six years and seven months of deliberately indifferent care. Dkt. 102-11 at ¶ 5. Between December 2006 and July 1, 2013, Ellis (1) complained about pain in his hip or back at least seven times, (2) attended at least five medical appointments related to hip or back pain, and (3) had two x-rays performed. The combination of these events, and the time that elapsed between them, was more than enough to put Ellis on notice that he was receiving deliberately indifferent care. The MRI simply confirmed what Ellis already knew; that the pain he had consistently been complaining about in his right hip was not being alleviated by the care given to him by Corizon.[7]

### b. P.A. Takagi Is Entitled To Summary Judgment Pursuant The Applicable Statute Of Limitations And Because His Treatment of Ellis Was Not Deliberately Indifferent

Pursuant to the discussion above, the Court concludes that P.A. Takagi is entitled to summary judgment pursuant to the applicable statute of limitations. P.A. Takagi's sole interaction with Ellis came on August 13, 2009. Dkt. 99-8 at 32. As such, P.A. Takagi's interaction with Ellis is almost four full years outside of the statute of limitations. P.A. Takagi is entitled to summary judgment on this basis.

Even if the Court evaluated the merits of Ellis' claims against P.A. Takagi however, it would still conclude that P.A. Takagi is entitled to summary judgment

---

[7] The Court is skeptical that the Continuing Violation Doctrine, if it was applied in this case, would save Ellis' claims to the extent they are premised on events that occurred before July 1, 2013. *Accord Del Rosario*, 2015 WL 4404864, at *3. In any event, Ellis has not made the argument that the Continuing Violation Doctrine applies, Dkt. 105 at 7-8, and the Court will not do so on his behalf.

because Ellis has not created an issue of material fact with respect to whether P.A. Takagi was deliberately indifferent. Again, P.A. Takagi met with Ellis one time. Dkt. 99-8 at 32. Ellis complained about pain in his hip stemming from a fall in a basketball game that took place six months prior to the visit with N.P. Takagi.[8] Dkt. 99-8 at 32. P.A. Takagi examined Ellis and prescribed ibuprofen, after finding that Ellis had normal reflexes and appeared to be well functioning. Dkt. 99-8 at 32; Dkt. 99-9 at 10. P.A. Takagi offered to have Ellis relieved from work duty, but Ellis declined. Dkt. 99-8 at 32.

First, P.A. Takagi could not have known about the extent of Ellis' injury. *Gibson*, 290 F.3d at 1188 (concluding that a medical provider must know of the risk that his or her care is imposing on the plaintiff for liability to attach). To the contrary, P.A. Takagi's exam revealed that despite the pain he was experiencing, Ellis had normal reflexes and appeared to be well functioning. Dkt. 99-8 at 32; Dkt. 99-9 at 10. Additionally, Ellis' decision to *decline* to be removed from work duty further supported P.A. Takagi's conclusion that any pain Ellis was suffering was limited and could appropriately be treated with ibuprofen. Dkt. 99-8 at 32.

Second, Ellis cannot show that P.A. Takagi either committed "a purposeful act or fail[ed] to respond to a prisoner's pain or possible medical need and ... harm caused by the indifference." *Penner*, 439 F.3d at 1096. An x-ray performed in November of 2013,

---

[8] The Court notes for the sake of clarity that Ellis was apparently referencing a separate fall on a basketball court in Idaho, which he suffered over two years after his fall on the basketball court in Texas. Ellis' opposition and statement of disputed facts do not claim that Ellis informed P.A. Takagi about the fall he suffered in Texas.

more than four years after P.A. Takagi saw Ellis, revealed only mild degeneration in Ellis' right hip. Dkt. 99-6 at 6. Even the initial radiologist in this case, Dr. Peck, after reviewing an MRI of Ellis right hip taken on September 18, 2014, concluded that there was "moderate right hip joint degenerative change" but no evidence of a ligament tear. Dkt. 99-7 at 35. Although Dr. Peck's diagnosis of Ellis was subsequently overruled by a specialist, the fact that both an x-ray and an MRI taken well after P.A. Takagi saw Ellis failed to immediately reveal an obviously severe injury demonstrates that Ellis cannot create an issue of material fact with respect to whether P.A. Takagi's treatment proximately caused his injury. *Vanzant v. Wilcox*, No. 1:15-cv-00118-BLW-CWD, 2018 WL 1468585, at *5 (D. Idaho Mar. 26, 2018) (discussing proximate cause inquiry in § 1983 cases).

Finally, Ellis cannot create an issue of material fact with respect to the level of care he received. Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton*, 622 F.2d at 460. Even if the Court accepts Ellis frequently urged argument that "pain is a symptom and not a diagnosis," Dkt. 105 at 10, ultimately Ellis cannot show that P.A. Takagi's failure to ascertain the root cause of his pain is anything more than negligence or, at most, medical malpractice. Accordingly, P.A. Takagi is entitled to summary judgment.

### c. N.P. Schaffer's Treatment of Ellis Was Not Deliberately Indifferent

N.P. Schaffer has interreacted with Ellis just three times. Their first interaction took place in late November of 2013. Dkt. 99-8 at 21. N.P. Schaffer evaluated Ellis and

asked Ellis why he had missed several physical therapy appointments that had been scheduled. Dkt. 99-8 at 21. After learning that Ellis had missed the appointments do to miscommunication, N.P. Schaffer ordered additional physical therapy sessions. Dkt. 99-8 at 21.

On December 13, 2013, N.P. Schaffer met with Ellis to review the results of an x-ray that had been ordered by a different non-defendant nurse practitioner. Dkt. 99-6 at 6. The 2013 x-ray showed mild degenerative change in Ellis' right hip, but little interval change compared to the x-ray performed on Ellis in 2008. Dkt. 99-6 at 6. N.P. Schaffer's last meeting with Ellis took place on May 30, 2014, after Ellis had received a steroid injection. The end result of the third meeting was a decision by N.P. Schaffer to refer Ellis to Dr. Young for further follow-up on Ellis' hip pain. Dkt. 99-8 at 14-15.

Much like Ellis' claims against P.A. Takagi, the Court concludes that Ellis fails in a variety of ways to create issues of material fact with respect to his deliberate indifference claims against N.P. Schaffer. N.P. Schaffer lacked knowledge regarding the extent of Ellis injury because the x-ray showed only mild degenerative change. *Gibson*, 290 F.3d at 1188. Furthermore, N.P. Schaffer did not fail to respond to Ellis' medical needs. *Penner*, 439 F.3d at 1096. To the contrary, N.P. Schaffer ordered additional physical therapy despite Ellis' non-attendance at prior sessions. And, when it became clear that Ellis' pain was not going away even after a steroid objection, N.P. Schaffer took the step of referring Ellis' case to Dr. Young. Finally, even if the Court faulted N.P.

Schaffer for failing to determine the root cause of Ellis' pain, this was at most negligence or medical malpractice, not deliberate indifference. *Broughton*, 622 F.2d at 460.

### d. Dr. Young's Treatment of Ellis Was Not Deliberately Indifferent

Dr. Young's sole interaction with Ellis occurred on June 11, 2014. Dkt. 99-8 at 13. Dr. Young examined Ellis and noted that Ellis was experiencing pain in his hip area. Dkt. 99-8 at 13. After the exam, Dr. Young scheduled Ellis for an appointment with Dr. Schwartsman. Dkt. 99-8 at 13.

After Dr. Schwartsman saw Ellis and requested that an MRI be performed, the request for an MRI went to Dr. Young. Dkt. 99-7 at 36. Dr. Young denied the request on July 24, 2014. Dkt. 99-7 at 36. Nevertheless, the MRI was ultimately approved by Dr. Young roughly a month later. Dkt. 99-4 at 121-27, *Ellis Depo.*, p. 83:12-89:7.

To begin with, Dr. Young's conduct during his appointment with Ellis does not create an issue of material fact with respect to Ellis' claim of deliberate indifference. Dr. Young lacked knowledge of the extent of Ellis' injury, though he did know, as N.P Schaffer and P.A. Takagi did before him, that Ellis was experiencing pain. *Penner*, 439 F.3d at 1096. Rather than failing to act, Dr. Young referred Ellis to a specialist, and authorized follow up care. *Broughton*, 622 F.2d at 460.

Of greater concern to the Court is Dr. Young's initial refusal to authorize an MRI. The Corizon Defendants argue that Dr. Young's initial refusal was justified because "an MRI is usually not indicated unless surgery has been recommended and, in fact, surgery had not been recommended at that point." Dkt. 99-2 at 8. Curiously, Ellis fails to

address this issue in his Response To Defendants Corizon, Inc., Dr. Young, N.P. Gelok, P.A. Takagi, and N.P. Schaffer's Motion For Summary Judgment, Dkt. 105. The Court has reviewed Dr. Young's relevant deposition testimony, Dkt. 99-4 at 121-127, *Deposition of Dr. Murray Young*, p. 83:12-89:7, and cannot determine why Dr. Young initially declined to order to the MRI in the face of a recommendation from a specialist that one be performed. Nevertheless, because Ellis (1) has failed to adequately argue that an issue of material fact exists with respect to Dr. Young's decision to delay the MRI and (2) has failed to marshal evidence showing that this one-month delay, in and of itself, caused additional deterioration in Ellis' hip, *McGuckin*, 974 F.2d at 1060, the Court concludes that Dr. Young is entitled to summary judgment.

### e. N.P. Gelok's Treatment of Ellis Was Not Deliberately Indifferent

Finally, the Court turns to N.P. Gelok. N.P. Gelok's first interaction with Ellis occurred on July 11, 2014, shortly after Ellis had seen Dr. Schwartsman. Dkt. 99-7 at 36-37. N.P. Gelok, acting on Dr. Schwartsman's recommendation, requested the MRI that Dr. Young initially declined. Dkt. 99-7 at 36-37.

After the MRI was ultimately performed, Ellis subsequently met with N.P. Gelok on October 1 and December 4, 2014. Dkt. 99-8 at 9, 11. At the first meeting, Gelok explained the results of the MRI and indicated that he would follow up with Dr. Schwartsman regarding the appropriate treatment plan. Dkt. 99-8 at 11. At the second meeting, N.P. Gelok reviewed the treatment that Ellis received for healthcare issues that are unrelated to this litigation. Dkt. 99-8 at 9.

Like P.A. Takagi, N.P. Schaffer, and Dr. Young, the Court concludes that N.P. Gelok is entitled to summary judgment. Gelok lacked knowledge with respect to the severity of Ellis injury, *Gibson*, 290 F.3d at 1188. By ordering the MRI and following up on the results with Dr. Schwartsman, Gelok endeavored to discover the cause of Ellis' pain. As such, N.P. Gelok acted in a manner consistent with Ellis' medical needs. *Penner*, 439 F.3d at 1096. These actions cannot support a claim for deliberate indifference, and are likely insufficient to support a claim for negligence or medical malpractice. *Broughton*, 622 F.2d at 460.

### f. Corizon, Inc. Is Entitled To Summary Judgment

Ellis' Amended Complaint contains only scant allegations with respect to conduct committed by Corizon, Inc., as opposed to Corizon, Inc.'s employees. Dkt. 54 ¶¶ 2, 42, 55, 56. In his Response to Defendants Corizon, Inc., Dr. Young, N.P. Gelok, P.A. Takagi and N.P. Schaffer's Motion for Summary Judgment, Ellis refines his allegations and argues that Corizon, Inc. had a pattern or practice of failing to provide continuity of care and keep accurate records, which in turn caused Ellis' injury. Dkt. 105 at 4-5. The Court is not persuaded.

First, Ellis' pattern and practice claim against Corizon, Inc. was not alleged in his Amended Complaint. Ellis does not allege that his medical records were incomplete due to Corizon, Inc.'s actions, nor does he identify particular policies that Corizon, Inc. has supposedly violated. The Court will not allow Ellis to constructively amend his already Amended Complaint at this stage of the litigation. *See Coleman v. Quaker Oats Co.*, 232

F.3d 1271, 1292 (9th Cir. 2000) (barring plaintiffs from adding additional theories of liability at the summary judgment stage when doing so would prejudice the defendant).

Second, even if the Court allowed Ellis to proceed on this claim, Corizon, Inc. would still be entitled to summary judgment. Ellis falls well short of creating an issue of material fact. The actions he complains of – failure to provide continuity of care and failure to keep accurate records – are directly contrary to policies put in place by Corizon, Inc. Ellis makes no attempt to show that, contrary to these written policies, Corizon, Inc. sanctioned a contrary pattern or practice of sloppy record keeping or failing to provide continuity of care. *See Connick*, 563 U.S. at 61 (holding that in order to successfully pursue a pattern and practice claim the "practice[] [must be] so persistent and widespread as to practically have the force of law"). At most, Ellis cites "isolated or sporadic events," which cannot be the basis of liability. *Castillon v. Corr. Corp. of Am., Inc.*, No. 1:12-CV-00559-EJL, 2016 WL 3676116, at *4 (D. Idaho July 7, 2016).

### 4. The Court Will Partially Seal Ellis' Opposition To Siegert's Motion For Summary Judgment

Parties must "overcome[ ] … [a] strong presumption" of public access when seeking to maintain the confidentiality of judicial files and records. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party seeking to seal documents attached to a dispositive motion has the burden of demonstrating "compelling reasons" for protection that outweigh the public interest. *Id.* at 1178-79. Ellis seeks to seal his Response to Defendant Siegert's Motion for Summary Judgment and all documents attached thereto. Dkt. 101. Siegert opposes Ellis' motion. Dkt. 107. Ellis

also seeks to seal his response to the Corizon Defendants' Motion for Summary Judgment and all documents attached thereto. Dkt. 104. The Corizon Defendants' do not object to the motion. Dkt. 104.

The sole argument put forth by Ellis for sealing "all documents pertaining to the [his] response[s]" is "so the material, information, and documents currently subject to the Protection Order issued for the Rule 30(b)(6) deposition will not be made public." Dkt. 101 at 1; Dkt. 104 at 1. The Rule 30(b)(6) deposition of Corizon is attached as Ellis Exhibit 5 in his opposition to Siegert's Motion for Summary Judgment. Dkt. 102-6. The same deposition is attached as Ellis Exhibit 1 in his Response to Defendant Corizon, Et. Als' [*sic*] Motion for Summar [*sic*] Judgment. Dkt. 105-2. Having previously found good cause, the Court will grant Ellis' motions with respect to Ellis Exhibit 5, Dkt. 102-6 and Ellis Exhibit 1, Dkt. 105-2. Because Ellis offers no justification for sealing the other portions of his oppositions and their accompanying materials, the Court will deny his motion.

## CONCLUSION

Ellis' opposition asks the Court not to consider the claims against each Defendant in a vacuum. In essence, Ellis asks the Court to take the fact that he received a full hip replacement and assume that in the years preceding his surgery, healthcare providers that he met with necessarily were deliberately indifferent to his plight. This is not the law. As it must, the Court has evaluated Ellis claims against each Defendant on the basis of what each Defendant knew about Ellis' injury at the time they treated him. The record

shows unequivocally that the Defendants did not act in a deliberately indifferent fashion; to the contrary, each Defendant at each juncture took a measured and reasonable approach to treating the pain that Ellis described to them. This cannot violate the Eighth Amendment.

## ORDER

Accordingly, the Court hereby:

i. GRANTS Siegert's Motion for Summary Judgment, Dkt. 97;

ii. GRANTS IN PART Ellis' Motion for Leave to File Under Seal Plaintiff's Response to Defendant Siegert's Motion for Summary Judgment, Dkt. 101, with respect to docket entry 102-6; and

iii. DENIES IN PART Ellis' Motion for Leave to File Under Seal Plaintiff's Response to Defendant Siegert's Motion for Summary Judgment, Dkt. 101, with respect to the rest of the materials filed under docket entry 102;

iv. GRANTS the Corizon Defendants' Amended Motion for Summary Judgment, Dkt. 99;

v. GRANTS IN PART Ellis' Motion for Leave to File Under Seal Plaintiff's Response to Defendant Corizon, Et. Als' [*sic*] Motion for Summar [*sic*] Judgment, Dkt. 104, with respect to docket entry 105-2;

vi. DENIES IN PART Ellis' Motion for Leave to File Under Seal Plaintiff's Response to Defendant Corizon, Et. Als' [*sic*] Motion for

Summar [*sic*] Judgment, Dkt. 104, with respect to the rest of the

materials filed under docket entry 105; and

vii.     ORDERS the Clerk of the Court to close this case.


DATED: November 30, 2018

B. Lynn Winmill
Chief U.S. District Court Judge